**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

CHASTITY PRICKETT,

     Plaintiff,

v.              607CV041

JOHN B. LAWSON, *et al.*,

     Defendants.

## O R D E R

## I. INTRODUCTION

This case began with a spider bite. Then-inmate and now 42 U.S.C. § 1983 plaintiff Chastity Prickett alleges that a spider bit her on her left breast while she was incarcerated at a Georgia probation detention center. In violation of her Eighth Amendment and other rights, she contends, detention officials were deliberately indifferent to her medical needs when they addressed the bite and the complications that arose from it. The defendants move to dismiss and for summary judgment. Doc. ## 24, 45.

## II. BACKGROUND

In 5/05, Prickett was under probation when it was revoked and she was sent to the Women's Detention Center (WDC) in Claxton, Georgia. Doc. # 44 at 23; # 26-2 at 1. She claims that

> [o]n or around [7/8/05, she] was bitten by a spider on her left breast. She showed the spider to a supervising officer. Prickett repeatedly requested to see a doctor during this time and was denied. She received inadequate medical care from the nursing staff of the WDC. She became very ill and was eventually transported to a local hospital, where she was assessed and transported to a larger hospital, where she underwent surgery. The wound stayed

open and did not heal for approximately four months.

Doc. # 26-2 at 1-2 (plaintiff's brief); *see also* doc. # 44 at (printed page) 23.[1]

WDC officials gave Prickett an institutional manual informing her of the availability of both a general and medical grievance procedure there. Doc. # 44 at 83. She does not now claim that she was unaware of such procedures, and in her deposition she admitted that she never filed any administrative grievances with WDC while she was there, nor at the hospital where WDC sent her, nor at her next place of incarceration, Pulaski State Prison (Pulaski). Nor, finally, did she do so when she was later re-incarcerated, on another probation revocation, at the Irwin County, Georgia Detention Center (IDC). Instead, she simply filed this case while still at the IDC. Doc. # 44 at 81-86; *see also* doc. # 25; # 24-2 exh. 1.

## III. ANALYSIS

Defendants want this case dismissed because Prickett failed to file a grievance at WDC, much less at IDC, for what happened at

---

[1] Plaintiff violated S.D.Ga.Loc.Civ.R 7.1(b) ("Every factual assertion in a motion, response, or brief shall be supported by a citation to the pertinent page in the existing record or in any affidavit, discovery material, or other evidence filed with the motion") by failing to cite to the record in her brief docketed at # 26-2.

Nevertheless, defendants do not dispute these facts (as recited here, they usefully summarize the facts alleged in Prickett's Complaint, doc. # 1), which are corroborated by Prickett's deposition. Doc. # 44 at 23 *et. seq.* For the purposes of the defendants' dismissal and summary judgment motions (both of which seek dismissal for lack of administrative exhaustion), the Court applies the standards set forth in *Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008), as informed by F.R.Civ.P. 56 standards, since the Court relies here on matters outside the pleadings. *See Turner*, 541 F.3d at 1082-83.

WDC. She thus failed to satisfy 42 U.S.C. § 1997e(a)'s exhaustion requirement, they contend, so dismissal is warranted. Doc. # 24 at 8-9. Prickett insists that § 1997e(a) exhaustion is not required because she was at IDC when she filed this case:

> It would be absurd to require a detainee or inmate to file an internal grievance with the [IDC] about something that happened years before at the [WDC]. [IDC] administrators have no supervisory authority over [WDC] personnel. To require Prickett to file a grievance for events taking place at another facility would be an exercise in futility and could result in no conceivable benefit to any party involved. *See Goebert v. Lee County*, [510 F.3d 1312 (11th Cir. 2007)].

Doc. # 54 at 6; *see also id.* at 5 ("As Prickett was incarcerated at another facility, no such administrative remedies were available").

Under the Prison Litigation Reform Act (PLRA),[2] which was intended to reduce the quantity and improve the quality of prisoner lawsuits, exhaustion of *available* administrative remedies within a prison or jail is required for any case challenging prison conditions, and not just for § 1983 actions. *Woodford*, 548 U.S. at 84-85.

It follows that if the remedy is not available, one cannot be faulted for failing to use it. *Goebert*, 510 F.3d at 1322 (administrative exhaustion procedure for inmates to appeal adverse decisions on their complaints was not "available" where they had no way of knowing about it; procedure was laid out in manual that inmates were never permitted to see, and it was omitted from inmate handbook).

Prickett was confined when she filed this action, just not at the original facility where her claims arose. Yet, the exhaustion requirement "applies to *all* inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (emphasis added),[3] so the key determinant here is *whether* Prickett was confined when she filed this case, not *where* she was confined:

> Other courts have [applied case law and have] found that a plaintiff who was imprisoned at one facility when a § 1983 claim accrued but who was released and, by reason of criminal misconduct, brought the claim while imprisoned at another facility is likewise subject to the

*Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

[3]  The PLRA defines a prisoner as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

---

[2]  As the Supreme Court explained:

> Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e *et seq.*, in 1996 in the wake of a sharp rise in prisoner litigation in the federal courts, *see, e.g., Alexander v. Hawk*, 159 F.3d 1321, 1324-1325 (C.A.11 1998) (citing statistics). The PLRA contains a variety of provisions designed to bring this litigation under control. *See, e.g.,* § 1997e(c) (requiring district courts to weed out prisoner claims that clearly lack merit); § 1997e(e) (prohibiting claims for emotional injury without prior showing of physical injury); § 1997e(d) (restricting attorney's fees).

PLRA's exhaustion requirement.

*George v. Hogan*, 2008 WL 906523 at * 4 (M.D.Pa. 3/31/08) (unpublished). Indeed,

> [m]any courts have held that the transfer of a prisoner from the facility where the grievance subject arose to another facility does not excuse the prisoner from complying with the first facility's exhaustion requirement. *See Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir.2002) (inmate failed to comply with the PLRA's exhaustion requirement where administrative procedures provided for the filing of a grievance after the inmate's transfer to another facility); *Rodriguez v. Senkowski*, 103 F.Supp.2d 131, 134 (N.D.N.Y. June 21, 2000) ("[T]he mere fact that Plaintiff has been transferred to another prison facility does not necessarily render the exhaustion requirement moot.").

*Miller v. Schuylkill County Prison*, 2007 WL 3342766 at * 5 (M.D.Pa. 11/9/07) (unpublished); *see also Berry v. Kerik*, 366 F.3d 85, 87 (2nd Cir. 2004), cited in *Saggese v. Corrente*, 2008 WL 474110 at * 4 (D.N.J. 2/15/08) (unpublished) ("Subsequent prison terms or transfer do not grant exhaustion avoidance...."); *Poirier v. Casperson*, 17 Fed. Appx. 460, 462-63 (7th Cir. 2001) (State prisoner had to exhaust his administrative remedies before filing § 1983 claim based on state prison officials' alleged violation of his constitutional rights by ignoring his medical needs and temporarily transferring him to out-of-state jail, even if prisoner was confused as to which state's grievance procedure to use, where both states offered administrative complaint procedures); *Carini v. Austin*, 2008 WL 151555 at * 3 (S.D.N.Y. 1/14/08) (unpublished) ("because plaintiff filed this

lawsuit before his release from prison, we must dismiss this case if plaintiff did not meet the PLRA's exhaustion requirement"); *Carini v. Austin*, 2008 WL 151555 at * 4 (S.D.N.Y. 1/14/08) (unpublished) ("because [plaintiff] has not shown that he was unable to pursue his remedies, his transfer to another facility is not a 'special circumstance' that excuses his failure to exhaust").[4]

The fact that Prickett ultimately wound up in, and filed this case from, a different prison does not excuse her failure to exhaust administrative remedies before commencing this case. *See, e.g., Miller v. Pryor*, 2008 WL 4649389 at * 1 (11th Cir. 10/22/08) (unpublished) (even when transferred to another facility, "Georgia prisoners must file out-of-time grievances to exhaust administrative remedies") (applying *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir. 2008) (Despite inmate's contention that he failed to report incident of prison abuse because he feared additional violent reprisals by prison officials, inmate failed to exhaust his administrative remedies, as required by PLRA for him to pursue § 1983 claim, where inmate

---

[4] A related issue is whether to dismiss an inmate's unexhausted claim that arose in prison but that was filed while the prisoner was out on release. Courts are divided on this issue. *See Richardson v. Romano*, 2003 WL 1877955 at * 1 (N.D.N.Y. 5/31/03) (unpublished); *see also id.* at * 2 (failure to exhaust administrative remedies necessitated dismissal, without prejudice, of § 1983 claims against state corrections officers based on alleged assaults against inmate, when inmate brought action after being out on release from prison); *Collins v. Goord*, 438 F.Supp.2d 399, 409 (S.D.N.Y. 2006) (collecting cases).

Prickett's situation is different. Her claim arose while she was confined yet she failed to exhaust it during that period. She was later released but filed no case. Then, finally, she re-entered prison on another probation violation, where she again failed to exhaust administrative remedies yet filed this action while there. *See* doc. # 26-2 at 1-2.

was later transferred to another prison where threat of violence was removed and he could have filed out-of-time grievance and then shown good cause for its untimeliness)). What matters is that (a) she was confined when her claim arose and when she elected to sue; and (b) whether her incarcerators in some way made administrative exhaustion "unavailable" to her. *Turner*, 541 F.3d at 1083 (exhaustion excused where prisoner followed the established grievance procedures and filed a formal grievance, but the prison warden allegedly tore it up); *Goebert*, 510 F.3d at 1323 (an administrative remedy is not "available" if it is unknown and unknowable to the inmate).

Since nothing made exhaustion unavailable to Prickett, her case must be dismissed on nonexhaustion grounds. *Williams v. Comstock*, 425 F.3d 175, 176 (2d Cir. 2005) (State prisoner's assertion that it was physically and mentally impossible for him to file an administrative grievance with prison within 14 days after suffering from stroke, as required by prison policy to timely file a grievance, did not explain why prisoner waited nearly two years before filing grievance with prison alleging that he was not provided with adequate medical care when he had stroke, and thus prisoner failed to exhaust administrative remedies as required by PLRA before bringing § 1983 action related to treatment after stroke), cited in RIGHTS OF PRISONERS § 16:9 (*The Exhaustion Requirement*) (2008).

The next issue is whether that dismissal should be with or without prejudice. Normally, the failure to exhaust warrants dismissal without prejudice. *See, e.g., Miller*, 2008 WL 4649389 at * 2. But

> [t]here are situations ... where dismissal with prejudice is the appropriate disposition. For example, some courts

have found that if exhaustion would be futile because the prisoner has been transferred to another correctional facility, dismissal *with* prejudice is proper. *See* [*Davis v. Reilly*, 324 F.Supp.2d 361, 366 (E.D.N.Y.2004)]; *see also Berry v. Kerik*, 366 F.3d 85, 87-88 (2d Cir.2003).

*Henry v. Nassau University Medical Center*, 2008 WL 638246 at * 2 (E.D.N.Y 3/6/08) (unpublished) (emphasis added).

Note that Prickett has cited (in doc. # 54 at 6) to *Goebert* and thus adverted to the above-mentioned "unavailability" concept. *See Goebert*, 510 F.3d at 1322. To reiterate, inmates may be excused from the exhaustion requirement if it is "unavailable" to them, such as where the grievance system itself is vague or otherwise unclear. *Id.*; *Williams v. Marshal*, 2008 WL 4787152 at * 3 (11th Cir. 11/4/08) (unpublished).

Prickett does not argue that here. Instead, she insists that it was fine for her to *not* invoke *any* available grievance procedure (including when she was at WDC and then in a prison hospital), then wait two years and, merely because she was at another prison when she filed this case, somehow be excused from the exhaustion requirement. The case law does not support that result.

Nor does it matter whether or not (as impliedly suggested by the *Miller* and *Bryant* cases) she could "exhaust by mail" her claims against WDC while she was confined at IDC -- for Prickett has simply failed to show what prevented her from filing a grievance while at WDC, and her deposition testimony bespeaks

a casual attitude at that. Doc. # 44-2 at 83-84.[5]

Prickett considers it impossible ("absurd") to administratively exhaust her claims now, yet it was her own indolence that caused the remedy's alleged unavailability.[6] *See supra* n. 5. If in fact it is impossible, then dismissal should be *with* prejudice here. *See Henry,* 2008 WL 638246 at * 2. But since the record is not pellucid on this point, the "*Henry*" result should apply here. *See id.* (ordinarily, court would dismiss *with* prejudice unexhausted § 1983-based, deliberate-indifference-medical-care case where inmate

---

[5] During her deposition Prickett at first claimed that she was not able to grieve her claim while at WDC: "Q. Did you file any grievances while you were there? A. No. I wasn't able to file any grievances, like I say." Doc. # 44 at 84. Yet, since that deposition she has been free to, but has not, provided *any* explanation for why she "wasn't able to." And later in her deposition she admitted that she could have but failed to file a grievance once she arrived at the next prison (Pulaski) following WDC. *Id.* at 85 ("Q. Did you file any medical grievances or any other grievances while you were at Pulaski? A. Actually, I hired my lawyer while I was at Pulaski.... And maybe that was my mistake for not filing any, you know, paper trail grievances, but, no, I didn't. When I got to Pulaski, that's when I hired [counsel who filed this case]").

Prickett now insists that it would have been "absurd" to grieve WDC wrongs from IDC. Doc. # 54 at 6. The Eleventh Circuit in *Miller* and *Bryant* obviously didn't think so in analogous situations found in those cases. And if it is true, as Prickett now insists, that she cannot pursue an "out-of-time" grievance against WDC (it would be "absurd"), then this only strengthens the case for dismissal *with* prejudice here -- since it will have been she who has waited too long, so she *herself* will have made the remedy "unavailable." *Goebert,* after all, excuses exhaustion where *prison officials* by their acts and omissions make the administrative remedy "unavailable" -- not inmates.

[6] No one substantively speaks to the availability issue, *e.g.,* whether Prickett could have exhausted "by mail" from IDC. Note that her claim against WDC has been for *money* damages, not injunctive relief, so her protestation (that it would be "absurd" to exhaust from IDC because IDC officials have no supervisorial authority over WDC officials) rings hollow here.

failed to exhaust administrative remedies while incarcerated in the subject facility and, at the time he filed case in district court, he was no longer incarcerated there, but because the record as then developed did not address non-exhaustion reasons, only dismissal without prejudice was then warranted). However, the Court will entertain an F.R.Civ.P. 59(e) motion from defendants if they can show that the record supports a with-prejudice dismissal.

## IV. CONCLUSION

Accordingly, the Court *GRANTS* -- on the exhaustion issue -- all of the defendants' motions to dismiss and for summary judgment (doc. ## 24, 45) and therefore *DISMISSES WITHOUT PREJUDICE* plaintiff Chastity Prickett's Complaint against them. This case is now *CLOSED.*

This __24__ day of November, 2008.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA